[No. 12928-1-II.   Division Two.   April 11, 1991.]

WYATT STAPPER ARCHITECTS, P.S., *Plaintiff*, v. 1501 PACIFIC
ASSOCIATES, ET AL, *Defendants*, CHALKER
ENGINEERS, INC., *Appellant*, FIRST
SECURITY REALTY SERVICES
CORPORATION, *Respondent*.

*Charlotte N. Chalker* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellant.

*Rodney T. Harmon* and *Geraghty, VanDerhoef & Harmon,* for respondent.

MORGAN, A.C.J.—Chalker Engineers, Inc., appeals from a summary judgment finding that First Security's foreclosure of a deed of trust extinguished Chalker's lien for engineering services. We affirm.

In April 1986, First Security Realty Services Corporation recorded a deed of trust on property located at 1501 Pacific Ave., Tacoma. The effect was to create a lien in favor of First Security. RCW 61.24.020 (deed of trust subject to mortgage laws except as otherwise provided); *John Davis & Co. v. Cedar Glen # Four, Inc.,* 75 Wn.2d 214, 222, 450 P.2d 166 (1969).

Between May 1985 and December 1986, Chalker Engineers, Inc., provided engineering services to the same property. In March 1987, Chalker filed its lien for engineering services pursuant to RCW 60.48.

In 1988, First Security foreclosed its lien and received a trustee's deed.[1] After litigation was commenced, it moved for summary judgment against Chalker on the ground that its lien was superior to Chalker's, and that the foreclosure proceedings had extinguished Chalker's. Chalker made a cross motion for summary judgment on the ground that its lien was superior, was unaffected by the earlier foreclosure proceedings, and should now be foreclosed. The trial court ruled for First Security.

If common law applies, the trial court was correct. The rule at common law was that where liens of the same class

---

[1] The trustee's deed was actually received by First Security's successor, but for present purposes, there is no reason to distinguish between them.

exist against the same property, the first one filed is superior. *Homann v. Huber,* 38 Wn.2d 190, 197, 228 P.2d 466 (1951). Here, First Security filed in 1986, while Chalker did not file until 1987. Therefore, under the common law rule, First Security's lien was superior.

Chalker, however, contends that the common law rule has been modified because RCW 60.48.020 incorporates RCW 60.04.050 by reference, and RCW 60.04.050 provides that mechanics' liens take priority over all liens "which may attach subsequently to the time of the commencement of the performance of the labor". First Security agrees that RCW 60.48.020 refers to and incorporates by reference those parts of the mechanics' lien chapter, RCW 60.04, that relate to the establishment and foreclosure of such liens. It disagrees, however, that RCW 60.48.020 also incorporates by reference RCW 60.04.050, because, it argues, RCW 60.04.050 relates to the priority of mechanics' liens, and not to their establishment or foreclosure. We hold that First Security is correct, and that RCW 60.48.020 does not incorporate RCW 60.04.050.

■■■ RCW 60.48.020 provides that engineering liens "shall be established by notice filed and shall be foreclosed in the manner as is now provided by law for the establishment and foreclosure of liens upon real estate for clearing, grading or otherwise improving the same." We construe this language in accordance with the usual rules of statutory construction. If it has a plain meaning—*i.e.,* if it can reasonably be construed as having only one meaning—we must adopt that meaning. *Crown Cascade, Inc. v. O'Neal,* 100 Wn.2d 256, 262, 668 P.2d 585 (1983). If it is ambiguous—*i.e.,* if it can be reasonably construed as having two or more different meanings—we must adopt that meaning which accords with the intent of the Legislature. *Department of Transp. v. State Employees' Ins. Bd.,* 97 Wn.2d 454, 458, 645 P.2d 1076 (1982). If it is silent, the common law rule remains unaltered.

RCW 60.48.020 does not by its plain terms incorporate RCW 60.04.050. Consequently, it is either ambiguous or

silent on the subject of priorities. If it is silent, Chalker cannot prevail, for the common law rule governs. If it is ambiguous, Chalker can prevail if its position is consonant with the intent of the Legislature. We will assume ambiguity, since that is the position most favorable to Chalker.

■ Assuming ambiguity, we are unable to discern that the Legislature, when it enacted RCW 60.48.020, intended to incorporate by reference the provisions of RCW 60.04-.050. In this regard, we are in accord with the one Washington case on point. *CH2M Hill, Inc. v. Greg Bogart & Co.,* 47 Wn. App. 414, 735 P.2d 1330, *review denied,* 108 Wn.2d 1023 (1987). In that case, Division One of this court expressly held that the Legislature, when it enacted RCW 60.48.020, did not intend to incorporate by reference RCW 60.04.050. *CH2M,* at 415, 418.

Several reasons support our view of legislative intent. Some we adopt from *CH2M,* while others are argued by the parties in the present case.

■ First, the common law rule on the priorities of liens is well known and well settled. If the Legislature had intended to change it—in legal jargon, to "derogate from it"—we expect that it would have said so in clear terms.

Second, the Legislature has at least once included the matter of foreclosure within a statute while leaving priority questions to other law. In RCW 61.24, the Legislature included provisions for the nonjudicial foreclosure of deeds of trust but left priority questions to be handled under general mortgage law. RCW 61.24.020; 1B B. Barker & I. Scharf, Wash. Prac. § 49.1, at 280 (3d ed. 1989). In our case, then, it seems plausible that the Legislature intended to include establishment and foreclosure provisions within RCW 60.48, while leaving priority questions to the common law.

Third, the Legislature has on other occasions dealt separately and expressly with the matter of priorities. Examples include RCW 60.20.050 (nursery stock liens), RCW 60.32-.050 (labor liens against franchises), RCW 60.34.050 (labor liens against restaurants), and RCW 60.76.050 (employees'

liens for benefits). The Legislature could have done likewise with regard to the priority of engineering liens, but did not, and this indicates that it had no intent to deal with the priority of such liens when it enacted RCW 60.48.020.

Fourth, there are practical reasons for according engineering liens a priority different from mechanics' liens. Work done by mechanics and laborers will usually be visible from and after the date of its commencement. This means that others interested in the property will have notice of the potential lien from and after that date, and that they can fairly be made subject to it from and after that date. In contrast, the work done by engineers will often not be visible, at least at the time of its commencement. As a result, others interested in the property may receive their first notice when the lien is filed, and in fairness should not be subject to it before that time.

Fifth, in *Wenatchee Fed. Sav. & Loan Ass'n v. Mission Ridge Estates,* 80 Wn.2d 749, 498 P.2d 841 (1972), the Supreme Court took a very narrow approach to what parts of the mechanics' lien statute the Legislature intended to incorporate within RCW 60.48.020. In *Wenatchee,* the appellant, Rupeiks, had attempted to establish an engineering lien through the "use of the broad nonspecific statutory form of lien claim contained in RCW 60.04.060." *Wenatchee,* 80 Wn.2d at 753. Thus, the precise issue was whether RCW 60.48.020, which concededly incorporated the establishment provisions of the mechanics' lien statute, went so far as to authorize the establishment of an engineering lien by the use of that form. The court said that RCW 60.48.020 referred to the mechanics' lien statute for the purpose of determining the procedural steps necessary to perfect the lien, and for a designation of the manner in which the lien was to be foreclosed, but not to the extent of incorporating the form of lien in RCW 60.04.060. *Wenatchee,* 80 Wn.2d at 753–54. Chalker correctly points out that the court was deciding a different issue from the one here, but nevertheless, a fair reading of *Wenatchee* is that we should narrowly construe RCW 60.48.020 with respect to

what it incorporates by reference. Since RCW 60.48.020 refers only to the establishment and foreclosure of liens, and since priorities are a concept not necessarily the same as either establishment or foreclosure, it follows that RCW 60.48.020 should not be construed as incorporating the priority provisions of RCW 60.04.050.

Chalker makes miscellaneous arguments on legislative intent that we will discuss briefly. Citing *Gaines v. Department of Labor & Indus.*, 1 Wn. App. 547, 463 P.2d 269 (1969), it argues that RCW 60.48.020 should be liberally construed in order to achieve the legislative purpose. Although the principle is correct, the argument is circular, for what we are trying to determine *is* the legislative purpose.

Citing *In re Estate of Donnelly*, 81 Wn.2d 430, 502 P.2d 1163, 60 A.L.R.3d 620 (1972), Chalker argues that RCW 60.48 was enacted to favor engineers, and that RCW 60.48-.020 should be construed in that light. Again, the principle is correct, but with regard to the specific matter of whether the Legislature intended to alter the common law rule on lien priorities, it is insufficient to overcome the competing considerations discussed above.

Citing *Ball v. Smith*, 87 Wn.2d 717, 556 P.2d 936 (1976), Chalker argues that engineers, as demonstrated by their common practice and "acquiescence", have long interpreted RCW 60.48.020 as according their liens priority from the date of the commencement of the work, and that this court should defer to their interpretation in the same way as it sometimes defers to the interpretation of public officials charged with the enforcement of a statute. Again, the cited principle is correct—the court does sometimes use the interpretation of public officials as an aid to interpretation—but to apply it here would require an extension that we decline to make. The two reasons for using the interpretation of public officials is that they are both neutral and knowledgeable with respect to their particular subject area. Engineers, however, are not neutral, for they have an entrepreneurial interest to assert. Moreover, they are in the

business of engineering, not lien enforcement, and there is nothing before us to indicate that they, as a group, study the engineering lien statute with the same intensity that a public official would use when studying a statute that he or she is charged to enforce.

Without citation, Chalker argues that a lien which does not relate back is useless. This of course is incorrect, for under the common law rule, such a lien takes priority over other, subsequently filed liens that also receive common law priority.

Finally, Chalker argues that its engineering lien should have priority over First Security's because Chalker commenced work before *CH2M* was decided,[2] and *CH2M* should not be applied retroactively. The contention fails, however, because we are not applying *CH2M*. Rather, we are applying the common law rule on lien priorities and RCW 60.48.020, both of which have been in existence without change since at least 1931.

Affirmed.

ALEXANDER, J., and PETRIE, J. Pro Tem., concur.

---

[2]Chalker commenced work in May 1985, and the *CH2M* opinion was filed in April 1987.