90 P.3d 1123 (2004)
121 Wash.App. 759
The McANDREWS GROUP, LTD., INC., A Washington corporation, Appellant,
v.
Horst E. EHMKE c/o Lowell Roberts; Puget Sound Title Company; U.S. Bank, a national banking association; Kenneth and Naida Gipson; Bonnie Mansfield; Commonwealth Title Company; City of Fife; Stan Bonner; Heirs at Law of Horst E. Ehmke, Deceased; Also all other persons or parties unknown claiming any right, title, estate, lien, or interest in the real estate described in the complaint herein, Defendants,
Equicredit Corporation of Washington, Respondent.
No. 29613-6-II.
Court of Appeals of Washington, Division 2.
May 25, 2004.
*1125 Bryan E. Lee, Attorney at Law, Issaquah, WA, for Appellant.
Scott Arnold Smith, Christina Gerrish Nelson, Bradley Alexander Evens, Short, Cressman & Burgess, Seattle, WA, for Respondent.
*1124 HOUGHTON, P.J.
The McAndrews Group, Ltd., Inc. (McAndrews) appeals a trial court partial summary judgment order giving priority to Equicredit Corporation of Washington's deed of trust over McAndrews' professional service lien. Because issues of material fact preclude summary judgment, we reverse and remand.

FACTS[1]
Horst Ehmke hired McAndrews to provide survey and engineering services on his Fife property. McAndrews began work on May 31, 1999. According to Todd Williams, McAndrews' project manager, its surveyors placed three-foot tall witness posts topped with fluorescent orange paint and fluorescent pink plastic ribbon at the property's boundaries, corners, and varying control points. The surveyors also painted a fluorescent orange diamond shape and the words "TMG Control Point No. 100" on the driveway and drove a steel nail into the middle of the driveway. Clerk's Papers (CP) at 76. The surveyors worked intermittently. According to Williams, no construction-related activity took place on the property during the next year.
On November 3, Ehmke executed a deed of trust on the property to Equicredit. Equicredit recorded the deed on November 10, 1999. In May 2000, Ehmke died. On May 19, 2000, McAndrews recorded a professional service lien claim on Ehmke's property for its outstanding $8,982.82 balance due. McAndrews later filed a complaint against Ehmke's estate and Equicredit[2] for money owed and to foreclose on the professional service lien as superior to Equicredit's deed of trust. Equicredit cross-claimed against Ehmke's estate for breach of contract, indemnification, and contribution.
Equicredit moved for summary judgment seeking dismissal of McAndrews' claims against it, arguing that it had a superior interest in Ehmke's property because McAndrews failed to properly record its lien. McAndrews countered that the visible survey stakes resulted in its professional service lien claim relating back to McAndrews' work start date, giving it priority.
In ruling on the summary judgment motion, the trial court stated that it believed "the surveyor [ ] professional services ... would [not] be readily visible from a cursory inspection of property." Report of Proceedings (RP) at 6-7. The court then subordinated McAndrews' lien to Equicredit's deed of trust.
McAndrews moved to default Ehmke's estate for failing to respond to the lawsuit. The trial court granted the motion on August 2, 2002, and entered a finding of fact that it had earlier determined the superiority of Equicredit's deed of trust. The trial court also entered a judgment in favor of McAndrews against Ehmke's estate and signed a decree of foreclosure on Ehmke's property, ordering it sold. The trial court did not address Equicredit's cross claims in the August 2, 2002 order.
On November 1, 2002, McAndrews moved to dismiss Equicredit's cross claims, arguing that the earlier findings of fact and conclusions of law failed to address the cross claims, leaving unresolved issues and precluding appellate review. The trial court denied the motion, but it entered a nunc pro tunc order that Equicredit's cross claims had been subsumed in the August 2, 2002 order *1126 and that it had resolved all issues between the parties.
McAndrews appeals.

ANALYSIS
McAndrews first contends that the trial court erred in applying RCW 60.04.031(5) and dismissing its claims.[3] It asserts that had someone from Equicredit inspected the property, he or she would have readily seen survey stakes and have been on notice of a superior professional service lien under RCW 60.04.021 and RCW 60.04.061. These statutes apply when RCW 60.04.031 does not, thus giving priority to a professional service lien even if the lien is recorded after a deed of trust.
We review an order of summary judgment de novo, engaging in the same inquiry as the trial court. Boag v. Farmers Ins. Co., 117 Wash.App. 116, 121, 69 P.3d 370 (2003). A court should grant summary judgment when no rational fact finder could decide for the nonmoving party based on the evidence before the court when viewed in the light most favorable to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). A court grants summary judgment only when reasonable minds could not differ that the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact. CR 56(c).
We review statutes de novo. Stone v. Southwest Suburban Sewer Dist., 116 Wash. App. 434, 438, 65 P.3d 1230 (2003); Intermountain Elec. Inc., v. G-A-T Bros. Constr. Inc., 115 Wash.App. 384, 390, 62 P.3d 548 (2003). Where unambiguous, we derive the legislature's intent and meaning from the statute's plain language. Stone, 116 Wash. App. at 438, 65 P.3d 1230. As the lien claimant, McAndrews bears the burden of showing that its lien is superior to Equicredit's deed of trust. Northlake Concrete Prods., Inc. v. Wylie, 34 Wash.App. 810, 813, 663 P.2d 1380 (1983).
The trial court ruled that RCW 60.04.031(5) gave Equicredit's deed of trust priority. Under RCW 60.04.031(5):[4]
Every potential lien claimant providing professional services where no improvement as defined in RCW 60.04.011(5)(a) or (b) has been commenced, and the professional services provided are not visible from an inspection of the real property may record in the real property records of the county where the property is located a notice which shall contain the professional service provider's name, address, telephone number, legal description of the property, the owner or reputed owner's name, and the general nature of the professional services provided. If such notice is not recorded, the lien claimed shall be subordinate to the interest of any subsequent mortgagee and invalid as to the interest of any subsequent purchaser if the mortgagee or purchaser acts in good faith and for a valuable consideration acquires an interest in the property prior to the commencement of an improvement as defined in RCW 60.04.011(5)(a) or (b) without notice of the professional services being provided.
(Emphasis added.) Thus, we must answer three questions: (1) Is surveying a professional service? (2) Were no statutorily defined improvements commenced on Ehmke's property? and (3) Would an inspection have revealed no visible professional services? RCW 60.04.031(5) applies only if we answer yes to all three questions.[5] If RCW *1127 60.04.031(5) does not apply, then McAndrews' professional services lien has priority over Equicredit's deed of trust because it dates back to McAndrews' work start date. RCW 60.04.021; RCW 60.04.061.
We answer the first question yes. RCW 60.04.011(13) specifically defines surveying as a professional service.
We also answer the second question yes. RCW 60.04.011(5) defines improvements as "(a) [c]onstructing, altering, repairing, remodeling, demolishing, clearing, grading, or filling in, of, to, or upon any real property or street or road in front of or adjoining the same; (b) planting of trees, vines, shrubs, plants, hedges, or lawns, or providing other landscaping materials on any real property."
Here, no evidence established that anyone had commenced statutorily-defined improvements on the property. The record discloses that the only work on the property was McAndrews' staking and marking, which do not fit within the statutory improvement definition.
But we cannot answer the third question because issues of material fact remain.[6] In his declaration, Williams said that the surveyors placed three-foot tall "witness posts" topped with fluorescent orange paint and fluorescent pink ribbon at the property corners. CP at 76. He also said that additional stakes served as topographical survey control markers indicating work progress. And the surveyors painted a fluorescent orange diamond and the words "TMG Control Point No. 100" on and drove a nail into the driveway.[7] CP at 76. There being no evidence to the contrary, Williams' declaration raises issues of material fact as to whether an inspection would have revealed this evidence of professional services. The trial court erred in granting summary judgment.[8]

Equicredit's Cross Claims
McAndrews also contends that the trial court erred in ruling nunc pro tunc that Equicredit's cross claims were subsumed in the trial court's August 2, 2002 order. Although McAndrews raises this error, it fails to brief or argue this issue and we decline to review it. RAP 10.3(a)(5).

Attorney Fees
Finally, McAndrews contends that its contract with Ehmke and RCW 60.04.181(3)[9] entitle it to attorney fees and costs. But McAndrews also acknowledges that if we reverse the trial court's summary judgment order, the trial court should decide the fee issue. We agree and, therefore, we do not award fees. Stuart v. Am. States Ins. Co., 134 Wash.2d 814, 824, 953 P.2d 462 (1998) (holding that attorney fees abide remand outcome); Schumacher Painting Co. v. First Union Mgmt., Inc., 69 Wash.App. 693, 702, *1128 850 P.2d 1361, review denied, 122 Wash.2d 1013, 863 P.2d 73 (1993) (in some instances trial court has discretion to award reasonable court and appellate level attorney fees).
Reversed and remanded for further proceedings.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] We derive the facts from the declarations and other evidence presented to the trial court on summary judgment.
[2] The complaint named other defendants, but their identity does not pertain to our review.
[3] As a preliminary matter, Equicredit argues that McAndrews stipulated to the subordination of its lien when it prepared and signed off on findings of fact and conclusions of law. We disagree. McAndrews prepared the findings and conclusions based on the trial court's oral ruling. Under the facts here, it did not stipulate to the correctness of the court's ruling nor did it consent to judgment.
[4] Chapter 60.04 RCW refers to "mechanics' and materialmen's liens," which includes labor, professional services, materials or equipment.
[5] McAndrews asserts that "five primary conditions" must be satisfied in order to subordinate a professional services lien under RCW 60.04.031(5), namely that (1) the lien claimant has not recorded a formal "Notice of Furnishing Professional Services"; (2) physical property construction has not commenced; (3) a property inspection reveals no visible signs of professional services; (4) the lender acts in good faith; and (5) the lender does not have notice of the professional services. Appellant's Br. at 13. Only three RCW 60.04.031(5) provisions apply here: whether surveying is a professional service, whether no improvements were commenced, and whether surveying stakes are visible professional services. Whether the lender acts in good faith without notice of the professional services is relevant only if McAndrews was required, but failed to record its professional services lien. Thus, McAndrews incorrectly argues that the statute sets forth five primary conditions here.
[6] Both parties cite out of state cases and argue that survey stakes are either per se visible or per se not visible. We decline to adopt the reasoning from any of these cases as they do not involve lien statutes that mirror Washington's.
[7] Equicredit asserts that requiring an inspection places an "onerous burden" on it to "diligently search[ ] a piece of property for signs of ... professional services." Respondents Brief at 37. We disagree. The plain language of RCW 60.04.031(5) implicitly contemplates that a subsequent deed of trust holder will perform a visible property inspection before recording its interest, in order to protect it against existing liens.
[8] We decline McAndrews' invitation to provide property inspection guidelines.
[9] RCW 60.04.181(3) states: "The court may allow the prevailing party in the action, whether plaintiff or defendant, as part of the costs of the action, the moneys paid for recording the claim of lien, costs of title report, bond costs, and attorneys' fees and necessary expenses incurred by the attorney in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable."